**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MARTINA PARKINSON,**

        **Plaintiff,**

    **v.**
                              **Civil Action 2:19-cv-5051**
                              **Judge James L. Graham**
                              **Magistrate Judge Jolson**

**COMMISIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Martina Parkinson, brings this action under 42 U.S.C. § 405(g) seeking review of

a final decision of the Commissioner of Social Security ("Commissioner") denying her applications

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  For the

reasons set forth below, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 10) be

**OVERRULED** and that judgment be entered in favor of Defendant.

    **I.**        **BACKGROUND**

Plaintiff filed her applications for DIB and SSI on August 18, 2015, alleging that she was

disabled beginning February 2, 1978.  (Doc. 9, Tr. 364–76).  After her applications were denied

initially and on reconsideration, the Administrative Law Judge (the "ALJ") held the hearing on May

30, 2018.  (Tr. 178–96).  On October 30, 2018, the ALJ issued a decision denying Plaintiff's

application for benefits.  (Tr. 21–31).  The Appeals Council denied Plaintiff's request for review,

making the ALJ's decision the final decision of the Commissioner.  (Tr. 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on

November 18, 2019 (Doc. 1), and the Commissioner filed the administrative record on February

13, 2020 (Doc. 9).  Plaintiff filed her Statement of Errors, (Doc. 10), on March 30, 2020, Defendant

filed an Opposition, (Doc. 12), on May 11, 2020, and Plaintiff filed her reply on May 26, 2020

(Doc. 13).  Thus, this matter is now ripe for consideration.

### A.    Relevant Medical History and Hearing Testimony

Because Plaintiff's statement of errors pertains to only her mental health limitations, the

Undersigned will limit the discussion of the medical record to the same.

### 1.    Medical History

> Mentally, the claimant has been diagnosed with dysthymic disorder, generalized
> anxiety disorder, and ADHD (Exhibits 2F, p. 9 and 11F, p. 5). The claimant has
> endorsed psychiatric symptoms, such as depressed mood, withdrawal behavior,
> mood swings, difficulty focusing, passive suicidal ideation, crying spells,
> hopelessness, anxiety, racing thoughts, and excessive worrying (Exhibits 2F, p. 8
> and 11F, pp. 2, 3). The claimant presented for a psychological consultative
> examination in September 2015 (Exhibit 11F). Dr. Miller indicated that the
> claimant presented herself as depressed and anxious (Exhibit 11F, p. 3). While
> some mental status examinations of record have evidence an anxious mood, others
> have been entirely normal (Exhibits 2F, p. 13; 3F, p. 10; 4F, p. 53; and 16F, p. 7).
> The claimant has been prescribed Strattera, Klonopin, and Bupropion to treat her
> symptoms, but these do not appear to be ongoing, regular prescriptions (Exhibits
> 2F, p. 9; 11F, p. 3; and 13F, p. 1). Additionally, despite these diagnoses, the
> claimant has not received any mental health counseling, has not required emergent
> treatment for an exacerbation of symptoms, and she has not been hospitalized on a
> psychiatric basis.

(Tr. 28).

Marjorie Kukor, Ph.D., reviewed Plaintiff's file on behalf of the state agency at the

reconsideration level on May 31, 2016.  (Tr. 237–54).  Dr. Kukor opined Plaintiff had moderate

restrictions in activities of daily living, social functioning, and concentration, persistence, and pace.

(Tr. 248).  When determining her mental health functioning, Dr. Kukor limited Plaintiff to one to

four step tasks with a need for occasional flexibility in schedule or breaks when her symptoms are

severe; no public interaction and brief and superficial interaction with co-workers; working with a

small number of coworkers without collaborative work; and environments with only little change.

Dr. Kukor also found that Plaintiff would need written explanations from supervisors when getting

feedback. (Tr. 252–54).  Dr. Kukor noted that Plaintiff experiences frustration, embarrassment, and

irritability due to hearing problems and others not understanding her.  (Tr. 253).

> ### 2.  *Relevant Hearing Testimony*

At the hearing, the ALJ summarized Plaintiff's testimony:

> She stated that she has complete hearing loss in her right ear and moderate hearing
> loss in her left ear. She mentioned that her hearing loss has gotten worse over time.
> She indicated that she would be unable to hear in the workplace. She noted that she
> has tried using hearing aids in the past, but they did not work and are costly. She
> remarked that she does not communicate well. She noted that she does go out places
> and becomes startled frequently when people come up to her because she does not
> hear them. Mentally, she indicated that she has depression.

(Tr. 27).

## B.  The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through March 31, 2006,

and had not engaged in substantial gainful employment since February 2, 1978, the alleged onset

date.  (Tr. 23).  The ALJ determined that Plaintiff suffered from the following severe impairments:

bilateral hearing loss; dysthymic disorder; generalized anxiety disorder; and attention deficit-

hyperactivity disorder (ADHD).  (Tr. 24).  The ALJ, however, found that none of Plaintiff's

impairments, either singly or in combination, met or medically equaled a listed impairment.  (*Id*.).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [T]he claimant has the residual functional capacity to perform a full range of work
> at all exertional levels but with the following nonexertional limitations: The claimant
> can never climb ladders, ropes, or scaffolds; can occasionally balance; instructions
> and feedback from supervisors should be face to face; requires verbal instructions;
> can work in a noise environment of SCO code 3 or lower to moderate level; is limited
> to hearing and speaking occasionally; cannot perform telephone work or commercial
> driving; cannot perform jobs involving group collaboration; cannot perform jobs
> involving hazards; cannot use moving, hazardous, or heavy machinery; and can have
> no exposure to unprotected heights.  Mentally, the claimant can perform goal-based
> production/work as measured by end result, not pace work; work allowed off-task
> 10 percent of the day; work limited to simple, routine, and repetitive tasks; work in
> a low-stress job defined as only occasional changes in the work setting; can have no

interaction with the public; can have only occasional, superficial interaction with co-workers; and can have occasional interaction with supervisors. Additionally, the claimant would be absent from work one day per month.

(Tr. 26).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Tr. 27).

After summarizing the record as noted above, the ALJ added,

In addition to the general lack of objective evidence to support her subjective complaints, there are other considerations that weigh against a finding of disability. For example, as mentioned earlier, the record reflects work activity after the alleged onset date. Although that work activity did not constitute disqualifying SGA, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. While the claimant has received various forms of treatment for the allegedly disabling ear symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in improving those symptoms, at least for a period of time (*See, e.g.*, Exhibit 24F, p. 3). Furthermore, while amplification has been recommended, there is no evidence of record indicating that the claimant pursued this course of treatment, although she testified that hearing aids have been unhelpful previously (Exhibits 12F, p. 3 and 16F, p. 2 and Hearing Transcript). Additionally, the record reveals relatively infrequent reports of psychiatric symptoms, there is little evidence of the use of medications designed to treat psychiatric or mental symptoms, and she has not received any mental health counselling (Exhibit 11F, p. 2).

(Tr. 28).

As for the relevant opinion evidence, the ALJ gave partial weight to the opinions of state agency medical consultants, Cynthia Waggoner, Psy.D., and Marjorie Kukor, Ph.D.  (Tr. 28–29). The ALJ altered the contact the Plaintiff can have with supervisors from occasional and superficial to only occasional, to allow for face-to-face instructions and feedback from supervisors.  (Tr. 29).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  The Commissioner's findings of fact must also be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.  *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.    DISCUSSION

Plaintiff raises a single error, arguing that the ALJ failed to properly account for Dr. Kukor's opinion in his RFC analysis. (Doc. 10 at 5–9).

"The Social Security Administration defines three types of medical sources: non-examining sources, non-treating (but examining) sources, and treating sources." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 273 (6th Cir. 2015) (citing 20 C.F.R. § 404.1502).  "A physician qualifies as a treating source if there is an 'ongoing treatment relationship' such that the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'"  *Id*. (citing 20 C.F.R. § 404.1527(c)(2)). If the treating physician's opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

case record,' then an ALJ 'will give it controlling weight.'"  *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)).  And, when an ALJ does not give the treating source's opinion controlling weight, the ALJ must give "'good reasons'" for discounting the opinion.  *Id.* (quoting *Rogers*, 486 F.3d at 242).

On the other hand, when the opinion comes from a non-treating or non-examining source, it is usually not entitled to controlling weight.  20 C.F.R. § 404.1527(c)(2).  Rather, the ALJ should consider relevant factors, including supportability, consistency, and specialization.  20 C.F.R. § 404.1527(d)(2).  There is however, no "reasons-giving requirement" for non-treating source opinions.  *Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016).  Rather, the ALJ must provide only "a meaningful explanation regarding the weight given to particular medical source opinions."  *Mason v. Comm'r of Soc. Sec.*, No. 1:18 CV 1737, 2019 WL 4305764, at *7 (N.D. Ohio Sept. 11, 2019) (citing SSR 96-6p, 1996 WL 374180, at *2).

Whether the ALJ satisfied that requirement here in explaining the weight he gave to Dr. Kukor's opinion is a close question:

> As for the opinion evidence, the state agency … psychological consultants' mental assessments are given partial weight because despite their program familiarity and longitudinal view of the medical evidence of record, their opinions are only partially consistent with the evidence…. Regarding her mental limitations, the undersigned has altered the contact the claimant can have with supervisors from occasional and superficial to only occasional to allow for face-to-face instructions and feedback from supervisors.  Therefore, the State agency … mental assessments are given partial weight.

(Tr. 28–29).

When read in isolation, a court could conclude that the ALJ failed to provide "a meaningful explanation regarding the weight given to" Dr. Kukor's opinion.  *See, e.g.*, *Aytch v. Comm'r of Socal Sec.*, No. 3:13-CV-135, 2014 WL 4080075, at *5 (S.D. Ohio Aug. 19, 2014), *report and recommendation adopted sub nom. Aytch v. Comm'r of Soc. Sec.*, No. 3:13-CV-135, 2014 WL

4443286 (S.D. Ohio Sept. 8, 2014) ("Simply stating that the ME's opinions are 'supported by the medical evidence,' without further explanation, does not satisfy the requirement that the ALJ provide meaningful explanation of the weight given medical opinion evidence."). But such a conclusion would ignore that "the ALJ's decision is read as a whole and with common sense." *Rosshirt v. Comm'r of Soc. Sec.*, No. 2:19-CV-3280, 2020 WL 1465786, at \*8 (S.D. Ohio Mar. 26, 2020) (citations and quotations omitted). Doing that here leads to a different conclusion.

The ALJ reviewed the evidence regarding Plaintiff's mental impairments and found that she was moderately limited in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (Tr. 24–25). He noted, among other things, that she: could manage her finances independently; could follow two-to-three step instructions; had a few friends and generally got along with co-workers; avoided people socially due to her hearing issues, rather than her psychological symptoms; had fair concentration with some difficulty staying on task; was overwhelmed when working with the public and had moderate coping skills. (Tr. 25). Although Plaintiff was diagnosed with dysthymic disorder, generalized anxiety disorder, and ADHD, she did not have regular prescriptions to treat the resulting symptoms and did not receive mental health treatment. (Tr. 28). Further, the record of mental status examinations was mixed, reflecting an anxious mood at certain points and a normal mood at others. (*Id.*). Finally, Plaintiff engaged in work activity after the alleged disability onset date. (*Id.*).

Based on this review of the record, the ALJ provided a meaningful explanation for why he gave Dr. Kukor's opinion partial weight. Part of Dr. Kukor's opinion was consistent with the record. (*See* Tr. 273–74 (finding that Plaintiff could: complete tasks with one to four steps; have no contact with the public and limited contact with coworkers; and could work in a job with little

7

change)). But other portions were not supported by the ALJ's review of the record.  (*See, e.g.*, Tr.

273 (finding that Plaintiff would need feedback in writing from supervisor)).  The ALJ's RFC

analysis included those limitations that were supported by the record:

> Mentally, the claimant can perform goal-based production/work as measured by end result, not pace work; work allowed off-task 10 percent of the day; work limited to simple, routine, and repetitive tasks; work in a low-stress job defined as only occasional changes in the work setting; can have no interaction with the public; can have only occasional, superficial interaction with co-workers; and can have occasional interaction with supervisors. Additionally, the claimant would be absent from work one day per month.

(Tr. 26).  And the ALJ did not err in the evaluation of Dr. Kukor's opinion as a result.

Plaintiff raises a number of arguments in response.  According to her, "the ALJ neglected

to incorporate all of the relevant limitations in the residual functional capacity determination."

(Doc. 10 at 6).  But as explained above, the Undersigned disagrees.  Even if the ALJ had given Dr.

Kukor's opinion great weight, he was under no obligation to adopt all of her proposed limitations.

*See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Although the ALJ gave

great weight to Dr. Torello's opinion, he was not required to incorporate the entirety of her opinion,

especially those findings that are not substantially supported by evidence in the record."); *Mason*,

2019 WL 4305764, at *10 (finding that the ALJ was not required to adopt all of the non-treating

source's limitations).

Next, Plaintiff asserts that the ALJ erred because he allegedly failed to "explain why the

limitations were omitted."  (Doc. 10 at 6).  The law, however, did not require the ALJ to do so.  *See*

*Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016) ("Martin protests the ALJ's

lack of explanation as to why Martin's marked impairment in interacting with the general public—

as found by Dr. Joslin—and his moderate to marked impairment in his ability to sustain

concentration—as found by Dr. Rutledge—were not explicitly incorporated into Martin's RFC.

But because Dr. Rutledge and Dr. Joslin are non-treating sources, the reasons-giving requirement is inapplicable to their opinions.").

At bottom, the ALJ reviewed the objective medical record and concluded that it supported Dr. Kukor's opinion in part.  That satisfied his obligation to provide a meaningful explanation for what weight he assigned her opinion.  And because his decision assigning Dr. Kukor's opinion partial weight was supported by substantial evidence, the ALJ did not err here.

## IV.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 10) be **OVERRULED** and that judgment be entered in favor of Defendant.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

9

IT IS SO ORDERED.


Date:   July 20, 2020                                    /s/ Kimberly A. Jolson
                                                        KIMBERLY A. JOLSON
                                                        UNITED STATES MAGISTRATE JUDGE