```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Martina Parkinson,

     Plaintiff,

  v.                            Case No. 2:19-cv-5051

Commissioner of
Social Security,

     Defendant.

<u>OPINION AND ORDER</u>

    Plaintiff, Martina Parkinson, brings this action under 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income. In a decision dated October 30, 2018, the administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of bilateral hearing loss; dysthymic disorder; generalized anxiety disorder; and attention deficit-hyperactivity disorder. PAGEID 64. The ALJ found that plaintiff's residual functional capacity ("RFC") would permit her to perform a full range of work at all exertional levels, with the following nonexertional limitations:

> The claimant can never climb ladders, ropes or scaffolds; can occasionally balance; instructions and feedback from supervisors should be face to face; requires verbal instructions; can work in a noise environment of *SCO* code 3 or lower to moderate level; is limited to hearing and speaking occasionally; cannot perform telephone work or commercial driving; cannot perform jobs involving group collaboration; cannot perform jobs involving hazards; cannot use moving, hazardous, or heavy machinery; and can have no exposure to unprotected heights. Mentally, the claimant can perform goal-based production/work as measured by end-result, not pace work; work allowed off-task 10 percent of the day; work limited to simple, routine, and repetitive tasks; work in a low-stress job

>  defined as only occasional changes in the work setting; can have no interaction with the public; can have only occasional, superficial interaction with co-workers; and can have occasional interaction with supervisors. Additionally, the claimant would be absent from work one day per month.

PAGEID 66. After considering the testimony of a vocational expert, the ALJ decided that there were jobs which plaintiff could perform and that plaintiff was not disabled. PAGEID 70-71.

This matter is before the court for consideration of plaintiff's August 3, 2020, objections to the July 20, 2020, report and recommendation of the magistrate judge recommending that the decision of the Commissioner be affirmed.

I. Standard of Review

If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Put another way, a decision supported by

2

substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

II. Objections

Plaintiff argued in her statement of errors that the ALJ did not properly take into account the opinion of Marjorie Kukor, Ph.D., a state agency consultant, in formulating plaintiff's RFC. On review of the report of Cynthia Waggoner, Psy. D., another state agency consultant, *see* PAGEID 253, Ex. 1A, Dr. Kukor found that plaintiff could complete one-to-four-step tasks, and that plaintiff would need occasional flexibility in scheduling work and breaks. PAGEID 294. Dr. Kukor opined that plaintiff could have no contact with the general public; that she could have brief, occasional and superficial interactions with coworkers, and could work by herself or around a small number of coworkers on projects that do not involve collaboration; and that she would need explanations given in writing when getting feedback from supervisors. PAGEID 294. Dr. Kukor noted that plaintiff experiences frustration, embarrassment and irritability due to her hearing problems and others not understanding her. PAGEID 294. Dr. Kukor observed that plaintiff could work in situations with little change, and that when major changes occur, she would need time to adapt to new

3

expectations.  PAGEID 295.  She noted that plaintiff's functional limitations "seem primarily due to depression as related to hearing loss and frustrations and irritations with same."  PAGEID 295.

The ALJ gave partial weight to the mental assessments made by Dr. Kukor and Dr. Waggoner.  PAGEID 68.  The ALJ stated that those opinions were "only partially consistent with the evidence."  PAGEID 69.  The ALJ further noted that he "altered the contact the claimant can have with supervisors from occasional and superficial to only occasional, to allow for face-to-face instructions and feedback from supervisors."  PAGEID 69.  Plaintiff argues that the ALJ's decision does not adequately explain why he accepted only some of the limitations posed by Dr. Kukor.  For example, plaintiff notes that the RFC did not address Dr. Kukor's observations that plaintiff would require written feedback from supervisors, should have only brief contact with co-workers, and would need occasional flexibility in scheduling work and breaks.

ALJs have more discretion in considering non-treating source opinions.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th cir. 2013).  Because Dr. Kukor was a state agency consultant, the ALJ was not obligated to give "good reasons" for the weight assigned to her opinion.  *Ealy*, 594 F.3d at 514; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).  Even where the "good reasons" requirement applies, review of the ALJ's explanation for rejecting an expert opinion need not be confined to a single paragraph.  *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439-41 (6th Cir. 2010)(ALJ may accomplish the goals of the "good reasons" requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other

evidence in the record); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001)(review of the Commissioner's findings must be based on the record as a whole).

  The ALJ was also not required to adopt all of the limitations recommended by Dr. Kukor. *See Earley v. Comm'r of Soc. Sec.*, No. 2:19-CV-53, 2020 WL 1080417, at *3 (S.D. Ohio Mar. 6, 2020). "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

  This court agrees with the conclusion of the magistrate judge that, considering the ALJ's decision as a whole, the ALJ gave adequate reasons for assigning only some weight to Dr. Kukor's opinion.  First, the ALJ thoroughly addressed plaintiff's medical history related to her hearing loss, which, according to Dr. Kukor, is the source of plaintiff's depression and functional limitations. The ALJ noted plaintiff's testimony that she has complete hearing loss in her right ear, and moderate hearing loss in her left ear. PAGEID 67.  He observed that plaintiff's most recent treatment notes from March, 2018, indicated some improvement in her hearing compared to her baseline in 2016.  PAGEID 68.  The ALJ noted that plaintiff did not use hearing aids, as she claimed that they were not helpful and expensive.  PAGEID 67-68.  The ALJ also stated that the record revealed infrequent reports of psychiatric symptoms, little evidence of the use of medications to treat mental symptoms, and no history of mental health counseling.  PAGEID 68.

  The RFC adopted by the ALJ essentially incorporated most of

5

the restrictions posed by Dr. Kukor.  Dr. Kukor stated that plaintiff can complete one-to-four-step tasks.  The ALJ basically incorporated this restriction by limiting plaintiff to simple, routine and repetitive tasks.  The RFC also included Dr. Kukor's recommendation that plaintiff have no interaction with the public.  Dr. Kukor further indicated that plaintiff could work in situations with little change, and added that, when major changes occur, plaintiff would need time to adapt to new expectations.  These concerns are essentially addressed by the RFC's provisions that plaintiff was "limited to simple, routine, and repetitive tasks" and "work in a low-stress job defined as only occasional changes in the work setting."  PAGEID 66.  Logically speaking, a job with "major changes" would not be "simple, routine, and repetitive" or "low-stress" until plaintiff had an adequate opportunity to become familiar with the job's requirements.

   The RFC also included Dr. Kukor's recommendation that plaintiff have only occasional, superficial interaction with co-workers, with no jobs involving group collaboration.  PAGEID 66.  Although  Dr. Kukor also stated that plaintiff should have "brief" interactions  with co-workers, she did not specify what she meant by "brief."  That specification was adequately addressed in the RFC by limiting plaintiff to "occasional, superficial interaction with co-workers."  PAGEID 66.

   Dr. Kukor indicated that when plaintiff's symptoms are severe, she would need occasional flexibility in scheduling work and breaks.  However, Dr. Kukor did not describe what she meant by"occasional flexibility," nor is it otherwise clear how this vague limitation could have been included in the RFC.  Instead, the

6

ALJ explained that he gave partial weight to the February, 2018, opinion of John Ryzenman, M.D., plaintiff's treating physician. PAGEID 69. Specifically, the ALJ stated that he adopted Dr. Ryzenman's proposed (and more precise) limitations that plaintiff would require work which allowed her to be off-task for ten percent of the day, and that she would be absent from work one day a month. PAGEID 69. This adequately explained why the ALJ did not incorporate Dr. Kukor's language in the RFC.

The ALJ stated that he had altered the contact the plaintiff could have with supervisors "from occasional and superficial to only occasional, to allow for face-to-face instructions and feedback from supervisors." PAGEID 69. He indicated that he therefore gave the state agency mental assessments partial weight. PAGEID 69. The RFC specifically mandated verbal instructions and did not follow Dr. Kukor's recommendation to include a requirement for written instructions from supervisors. However, Dr. Kukor gave no explanation for this requirement, nor has plaintiff identified any evidence in the record which indicates that she would need written instructions.

The ALJ's decision to require verbal instructions in the RFC is supported by the record. The ALJ indicated that he gave great weight to the opinion of Marc E. Miller, Ph.D., a consultative psychological examiner. PAGEID 69. In his report, Dr. Miller stated that it was necessary for the examiner to speak loudly and sit close to plaintiff so that she could hear or read lips. PAGEID 688, Ex. 11F. Dr. Miller estimated that plaintiff was in the low average range of intelligence, noting that she was a school dropout, with no GED. PAGEID 689. This would raise questions as

to plaintiff's ability to understand written instructions, as opposed to receiving verbal instructions from a supervisor who would be immediately available for answering questions. The ALJ also gave partial weight to the opinion of Robert Wysokinski, M.D., the state agency medical consultant. PAGEID 68. Dr. Wysokinski observed that plaintiff could understand individuals one-to-one. PAGEID 292, Ex. 5A.

Dr. Kukor did not specifically recommend that plaintiff's interactions with supervisors be superficial. Rather, this recommendation was made by Dr. Waggoner. *See* PAGEID 253, Ex. 1A. Dr. Waggoner's opinion is not the subject of plaintiff's objection. In any event, the ALJ also gave Dr. Waggoner's opinion partial weight and adequately explained that the RFC permitted occasional contact with supervisors to allow face-to-face instructions and feedback from supervisors, as discussed above. PAGEID 69.

The ALJ's decision, read as a whole, is sufficient to provide a meaningful explanation for the weight he assigned to Dr. Kukor's opinion. The ALJ's decision to assign Dr. Kukor's opinion partial weight is supported by substantial evidence, and plaintiff's objection is denied.

III. Conclusion

In accordance with the foregoing, the court concludes that the ALJ's finding of nondisability is supported by substantial evidence. The court adopts and affirms the magistrate judge's report and recommendation (Doc. 14). The Commissioner's decision is affirmed, and this action is dismissed. The clerk shall enter final judgment affirming the decision of the Commissioner.

It is so ordered.

Date: October 2, 2020           s/James L. Graham
                                James L. Graham
                                United States District Judge